**\*E-FILED 11/21/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADVANTE INTERNATIONAL CORP. et al.,<br><br>  Plaintiffs,<br>  v.<br><br>MINTEL LEARNING TECHNOLOGY, et al.,<br><br>  Defendants. | NO. C 05-01022 JW (RS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND DENYING MOTION FOR PROTECTIVE ORDER** |

## INTRODUCTION

Before the Court is a motion to compel brought by defendant Mintel Learning Technology and a related motion for a protective order brought by plaintiff Advante International Corp. on shortened time. The matters having been fully briefed and argued, Mintel's motion to compel will be granted in part and denied in part, and Advante's motion for a protective order will be denied.

## DISCUSSION[1]

A. <u>Hard Drive Inspection</u>

Mintel's motion includes what is, in essence, its third attempt to obtain a right to image the hard drives of Advante's servers for the purposes of discovering relevant documents. By orders filed June 29, 2006, and July 21, 2006, the Court rejected Mintel's contentions that it had made a

---

[1] The factual background of this action has been discussed in prior orders and will not be repeated here.

1

showing that such discovery was warranted. The Court's prior rejection of Mintel's requests was two pronged: First, despite the vehemence and invective with which Mintel argued its belief that wrongdoing had occurred, Mintel failed to establish a reasonable basis to depart from ordinary discovery procedures in this action. Second, as the Court stressed in its order dated June 29, 2006, Mintel appeared to have little understanding that even in a case where imaging of an opposing party's hard drives might be warranted, such an inspection would not be permitted absent "an examination protocol that would protect the other party's legitimate privacy and other interests."

Mintel has now shown that serious questions exist both as to the reliability and the completeness of materials produced in discovery by Advante. Among other things, there is evidence that copies of emails were altered at some point in time in a manner that arguably served to downplay or even conceal a relationship between Advante and James Liu, and the extent to which Liu may have worked with Advante to develop the products at issue in this action. Advante does not deny that materially-different versions of these emails exist; instead it argues that since it has now produced the relevant "native" files, both parties can investigate and nothing remains to be compelled. Mintel has adequately shown, however, that sufficient questions exist, not only with respect to these emails but also with respect to other discrepancies in Advante's discovery responses, such that a forensic examination of Advante's hard drives is warranted.

What Mintel has *not* shown, however, is that it would be appropriate to allow its retained expert to conduct such an examination, until and unless the parties reach a stipulation as to the examination protocol. The "double blind" procedure suggested by Mintel, and its offer to allow Advante to have an expert present, may be steps in the right direction. Nevertheless, Mintel is not entitled to set the conditions of the inspection unilaterally nor to select the person who will perform it. Additionally, whatever documents or data may be recovered in the inspection, whether existing documents, recovered deleted documents, or other information, should all be produced first to counsel for Advante for its review as to relevance, responsiveness, and privilege, prior to any disclosure to Mintel or its counsel. See, e.g., inspection protocol discussed in *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1054-55 (S.D. Cal. 1999). Accordingly, counsel for the parties shall meet and confer within 5 business days of the date of this order to attempt to agree on a

protocol for the imaging and the subsequent production of responsive documents. If the parties cannot agree that the inspection can be carried out by Mintel's expert under observation by an expert retained by Advante, then the parties shall attempt to agree on a procedure for selecting a neutral third party to conduct the inspection.

No later than December 1, 2006, the parties shall file a joint letter brief setting forth what agreements they may have reached and what disagreements may remain as to an inspection protocol.[2]

If the parties have not reached an agreement as to the identity or identities of one or more experts who will conduct the inspection, then by December 8, 2006, each party shall propose the names of up to three experts, and shall provide the Court with information regarding their qualifications and the fees they will charge to complete the work.

B. <u>Scope of Discovery</u>

Mintel's motion to compel seeks the following:

1. The word and user database of English Builder;

2. The binary files for English Builder;

3. ID and password for Vanteus Online, an Advante's service parallel to English Builder;

4. Documents related to the contents and source code of Vanteus Online;

5. Sound files in the .swf format;

6. Contents in the folder "usivy," "images," "mintel," "English Learn System";

7. Native electronic files downloaded from Advante's hard drives, produced in their original folders and subfolders;

8. Privilege and relevancy logs for documents withheld by counsel from its download;

9. Redacted portion of log files sent from counsel for EZ Publishing to Advante.

---

[2] Although a forensic examination of the hard drives will be permitted because Mintel has shown questions exist that can best be answered by such an examination, Mintel has *not* established that "perjury," "evidence spoliation," or other intentional wrongdoing necessarily has taken place, and this order should not be seen as an adjudication of Mintel's accusations in that regard. Moreover, there is nothing in the record at this point to support Mintel's charge of intentional wrongdoing by Advante's counsel.

3

1   As a threshold issue, Advante contends that even though Mintel has demanded these specific
2 items in "informal requests," it has failed to serve specific document requests that require such
3 materials to be produced.  Mintel responds that all of these categories are subsumed within its
4 formal document requests.[3]  A party propounding discovery requests is often faced with the
5 dilemma that if it uses broad language or insists upon a broad interpretation of its requests, the
6 requests will be objectionable as overbroad or unduly burdensome, but it may not be able to make
7 more specific requests until some responses have been received that lead to a better understanding of
8 what kinds of documents or other information likely exist.  Even where a responding party in good
9 faith does not interpret a particular request as requiring the production of certain specific kinds of
10 documents, one purpose of the "meet and confer" process is to allow the parties to reach a more
11 refined understanding of what is being requested in light of what may actually exist.  Whether, in a
12 particular instance, the propounding party should be required to serve formal "follow up" discovery
13 or whether it should be permitted to use the meet and confer process to obtain specific material
14 arguably within the scope of the original requests depends on the circumstances.  Although it is a
15 close call on the record presented here, the documents sought in this motion are within the scope of
16 materials requested under a reasonable reading of Mintel's formal document requests.

17   Advante's more substantive objection to the discovery in dispute arises from its contention
18 that Mintel has improperly expanded the scope of what it claims was its trade secret that Advante
19 allegedly misappropriated. Early in this litigation, Mintel responded to an interrogatory seeking
20 identification of the trade secrets in dispute by stating, in relevant part, that its trade secret consisted
21 of "the entire source code and all algorithms of Mintel's Memory Engine Product."  That
22 interrogatory response was the product of prior motion practice in which Advante had challenged the
23 adequacy of Mintel's specification of its trade secret.  Believing that Mintel might later wish to

---

[3] Mintel cites, in particular, Request No. 19 ("All documents referring or relating to www.usivy.com"); No. 26  ("All documents referring or relating to all the websites that Advante/Zhang/Wei have used since March 16, 2002, to market, describe, or otherwise refer or relate to any products or services provided by Avante/Zhang/Wei"); No. 33 ("All documents referring or relating to all persons involved in developing the computer software supporting or interfacing with the Learning Program"); and No. 36 ("All documents referring or relating to the Learning Program.")

4

1  *narrow* the scope of its trade secret claim, the Court specifically cautioned that "you can't simply
2  supplement six months from now and say, Oh we didn't mean that our entire source code was a trade
3  secret."

4  On the day of the discovery cut off, Mintel served an amended interrogatory response that,
5  rather than narrowing its claim, appears to broaden it substantially.  The amended response reads, in
6  relevant part, "[t]he entire Worldbuilder software, including source code, user and word database,
7  graphics files, algorithms, incorporation and arrangement of third party source code and materials,
8  and sound files."  Mintel insists that the amended response was served only to *clarify*, not to expand
9  its claim, and that over the course of this litigation the parties have always understood Mintel's
10 original reference to "source code" and "algorithms" was intended to include other functional
11 elements of its software such as sound files and databases, even if such items are not "source code"
12 in a technical sense of the term.

13 Whether or not Mintel will be permitted to *recover* under any of its legal theories for any
14 misappropriation of elements other than source code or algorithms is a question for another day.  For
15 purposes of these discovery motions, the issue is whether Advante should be compelled to produce
16 materials that are not strictly "source code" or "algorithms," even disregarding Mintel's attempt to
17 "clarify" its trade secret designation.  As Advante points out, a trade secret designation under
18 California Civil Code 2019.210[4] serves to, among other things, "assist[] the court in framing the
19 appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within
20 that scope."  *Computer Economics, Inc. v. Gartner Group Inc.*, 50 F.Supp.2d 980, 985 (S.D. Cal.
21 l999).  Thus, [t]he trade secret designation mandated by section 2019.210 is not itself a pleading but
22 it functions like one in a trade secret case because it limits the scope of discovery in much the same
23 way as the allegations of a complaint limit discovery in other types of civil actions." *Advanced*
24 *Modular Sputtering, Inc. v. Superior Court*, 132 Cal.App.4th 826, 835 (2005).   Advante is also
25 correct that the mere presence in a complaint of claims made on theories other than trade secret

---

[4] As noted in the prior order, the Court has not concluded that application of section 2019.210 is mandatory in federal court proceedings, but the statute provides an appropriate guide in the absence of specific provisions in the federal rules governing trade secret discovery.  Prior to July 1, 2005,  the section was numbered as 2019, subsection (d).

5

1  misappropriation will not necessarily support discovery that goes beyond what would be allowed on
2  the trade secret claim itself. *Id.* at 834-835 ("Where, as here, every cause of action is factually
3  dependent on the misappropriation allegation, discovery can commence only after the allegedly
4  misappropriated trade secrets have been identified with reasonable particularity, as required by
5  section 2019.210."); see also *Neothermia Corp. v. Rubicor Medical, Inc.* 345 F.Supp.2d 1042, 1043
6  (N.D. Cal. 2004) (applying section to action with no express trade secret misappropriation claim.)

   Nevertheless, Advante's contention that it need not produce materials beyond source code
and algorithms relies on an overly restrictive view of the function of the trade secret designation.
Even though the designation "functions like" a pleading, the touchstone remains relevance as
defined in Rule 26 of the Federal Rules of Civil Procedure: "Relevant information need not be
admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of
admissible evidence."  Here, even assuming Mintel will not be able to pursue a claim for
misappropriation of anything other than the source code or algorithms, if Advante in fact possesses
sound files, databases, or other program elements that appear to have been copied directly from
Mintel, that could be probative on the issue of whether Advante engaged in any actionable
misappropriation.[5]

   Additionally, regardless of the precise scope of the affirmative claims Mintel may be able to
pursue in this action, Advante's own complaint herein avers that Mintel had publicly charged
Advante with intentionally copying "Mintel's database, vocabulary and sound files . . . ." First
Amended Complaint, ¶ 17.  The discovery Mintel now seeks is therefore relevant for purposes of
discovery under Advante's pleading as well.  Accordingly, this portion of Mintel's motion will be
granted, and Advante's corresponding motion for a protective order will be denied.

   C. Depositions

   Mintel seeks to compel depositions of  Brad Bonnington and David Tran, information
systems employees of Advante's *counsel,* who were involved in counsel's prior efforts to assure this

---

[5] Possession of identical files, of course would not necessarily establish any copying, much less improper copying, as other explanations for similarities could exist.  Determining what did or did not occur is the point of the discovery process.

6

1 Court that all responsive documents were being produced. Mintel's argument that it may depose the
2 individuals because attorney-client privilege and work product protection has been waived is
3 misplaced. There is no reason to believe that either individual possesses knowledge relevant to the
4 claims and defenses in this action. Mintel is seeking "discovery about discovery," rather than
5 information reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ.
6 P. 26 (b) (1). Particularly in light of the conclusion that a forensic examination of the drives will be
7 permitted, there is no basis to depose Bonnington or Tran, and that portion of Mintel's motion is
8 hereby denied.[6]

9 The only other deposition still in dispute in this motion is that of Dr. Zou, an individual who
10 apparently participated in the development of Advante's products. Advante represents that Dr. Zou
11 is not an employee, is currently in China, and that Advante lacks the power to compel him to attend
12 a deposition. Mintel has made no showing to the contrary, so that portion of Mintel's motion will
13 also be denied.

D.  Interrogatory Responses

15 Advante has agreed to supplement its response to Interrogatory No. 6 and asserts that it has
16 no further information with which it could supplement its response to Interrogatory No. 17.
17 Although Mintel's reply brief accuses Advante of having taking inconsistent positions that it does
18 not find credible, Mintel appears to concede that nothing remains to be compelled with respect to
19 these interrogatory responses.

---

[6] At the hearing, Mintel appeared to concede that deposing Bonnington and Tran would be superfluous upon inspection of the hard drives.

7

## CONCLUSION

Mintel's motion to compel is granted to the extent set forth above and is otherwise denied. Advante's motion for a protective order is denied. The parties are directed to meet and confer regarding a protocol for inspecting the hard drives and shall file a joint letter brief regarding that issue no later than December 1, 2006.

IT IS SO ORDERED.

Dated: November 21, 2006

RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Chien-Ju Alice Chen     achen@Fenwick.Com, dyoungman@fenwick.com

Rodger R. Cole     rcole@fenwick.com, vpieretti@fenwick.com

Songmee L. Connolly     SConnolly@Fenwick.com, lrubinstein@fenwick.com

J. James Li     lij@howrey.com, schantellk@howrey.com; ew@howrey.com

Ryan Jared Marton     rmarton@fenwick.com,

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 11/21/06**                                                                 **Chambers of Judge Richard Seeborg**

                                                   **By:**     **/s/ BAK**

**United States District Court**
For the Northern District of California